[Civ. No. 6284. First Appellate District, Division One.—December 28, 1928.]

IRENE MAYER et al., Plaintiffs, v. WILLIAM HOLMES WEST et al., Defendants.

G. C. CALKINS et al., Cross-Complainants and Appellants, v. IRENE MAYER et al., Cross-Defendants and Appellants.

W. W. Kaye for Cross-complainants and Appellants.

John C. Packard for Cross-defendants and Appellants.

CAMPBELL, J., *pro tem.*—Two appeals are presented on the record herein, one taken by William Holmes West and Dora May West, cross-defendants, from the judgment adjudging that a certain contract be canceled and annulled, and the other taken by cross-complainants C. C. Calkins and W. W.

Kaye from the order denying their motion for an order that another and different judgment be entered, identically the same in form as the one entered, but with the additional provision that the cross-complainants should have and recover from the cross-defendants William Holmes West and Dora May West the sum of $2,000, being the amount fixed by the court as the value of the use and occupation of the premises involved in the action during the time the same were unlawfully withheld from cross-complainants.

On February 26, 1920, Calkins, being the owner of the property involved, entered into an agreement to convey the same to West, at which time an escrow was made with the Los Angeles Title Insurance Company. By this escrow West agreed to pay $3,700 for the property, payable $700 on delivery of a deed by Calkins within thirty days, which amount was deposited in escrow with the title company; $1,200 by trust deed given by West and wife to secure a note for that amount, payable $25 a month with interest at seven per cent per annum; and the balance of $1,800 to be assumed by West in the payment of a mortgage which then covered the property; Calkins was unable to give a deed and certificate of clear title within thirty days and accordingly on April 15, 1920, he and West entered into a written agreement wherein the terms of payment were recited in harmony with the escrow, and wherein it was further stated that an action ''was filed on the 16th day of February, 1920, to quiet title to said property, and a certificate of title is to be furnished at the termination of said suit or as soon thereafter as the said Title Company can do it, and not later than fifteen days after the case was decided by said court.'' On July 22, 1920, Calkins and West indorsed a further writing upon this agreement limiting the time as follows: ''It is further agreed that said agreement relative to last clause set out therein shall not extend beyond April 1st, 1921.'' Subsequent to February 26, 1920, West and wife entered into possession of the property, and thereafter undertook to sell it to Irene Mayer, plaintiff herein, who brought this action for specific performance, or if such relief were not obtainable, then for damages. She obtained a judgment for damages against West and wife, which judgment has been satisfied, and, therefore, that phase of the case is not involved on this appeal. West and wife paid to Calkins the installments of $25 per month to and including February 26, 1921,

and also paid interest on the contract to that date. They also paid the interest on the mortgage of $1,800 to and including June 17, 1923, but failed and neglected to make any further payments to Calkins either of principal or interest on the purchase price or to pay any further sums either as principal or interest on the mortgage. As a result, an action to foreclose such mortgage was commenced on August 30, 1923. Calkins was unable, as he testified, to deliver a clear deed on April 1, 1922, for the reason that the action to quiet title was still pending, and adverse claims against the property were being asserted until as late as October 30, 1924. Not being able to deliver a clear title to the property as required according to the escrow or within the time extended by the agreement, Calkins demanded of West either that he deliver possession of the property or make payments according to the terms of the contract. In answer to the question why he did not continue to make payments after April, 1921, West stated: "Because the contract calls for him to have the title perfected. Then I paid up until this time and told him that any time he would furnish title, I would pay him up and go on with it."

The record shows that in April, 1920, West and wife were put in possession of the property involved, by Calkins under the agreement of sale; that the Wests were required to pay $1,900, $700 of which was to be paid upon the furnishing of a certificate of title, and the balance in installments of $25 per month; that Calkins was unable to furnish a certificate of title as agreed upon until October, 1924; that the Wests have not paid the $700, it having merely been deposited with the escrow, and have paid but $200 of installments which matured during the first year; that they failed to make any payments since February, 1921; that they failed to pay the mortgage indebtedness of $1,800 and as a result foreclosure proceedings were instituted; that at the time of the trial, which was more than four years after delivery of possession, Calkins had received but $200 of the purchase price, the Wests claiming that by tendering a note and trust deed to the title company they were excused from further performance; that during a greater portion of the time since the property was delivered West received rent amounting to $50 per month and failed to apply the same

either in payment of the purchase price or in reduction of the mortgage indebtedness.

The court found that cross-defendants William Holmes West and Dora May West had repudiated their contract and that cross-complainants C. C. Calkins and W. W. Kaye are entitled to possession of the premises and that the value of the use and occupation of the premises from March 1, 1922, the date West and wife took possession of the premises from plaintiff Irene Mayer, to the date of the trial is the sum of $2,000.

The cross-complaint of Calkins and Kaye states a simple cause of action for the recovery of possession of the property, together with the value of its use and occupancy. The answer of West and wife to such cross-complaint denies that since January 1, 1921, cross-complainants have been or now are the owners of the property described, and alleges as a further defense that cross-defendants have been in the open, notorious, exclusive, uninterrupted, and adverse possession of the property during all the time in such answer mentioned, holding the same adversely to cross-complainants and all other persons for more than five years. They also plead as a defense the statute of limitations, and that another action is pending. This latter defense and the defense of the statute of limitations are not argued in the briefs and we are therefore not called upon to consider them. (*People* v. *Woon Tuck*, 120 Cal. 297 [52 Pac. 833] ; *People* v. *McLean*, 135 Cal. 309 [67 Pac. 770].)

■ It is elementary that a vendor may recover possession in ejectment from a vendee in possession who repudiates his contract. (*Woodard* v. *Hennegan*, 128 Cal. 293 [60 Pac. 769] ; *Coates* v. *Cleaves*, 92 Cal. 427 [28 Pac. 580] ; *Whittier* v. *Stege*, 61 Cal. 241; *Hicks* v. *Lovell*, 64 Cal. 14 [49 Am. Rep. 679, 27 Pac. 942].) If a vendor is unable to perform because of failure of title, the vendee cannot retain possession and refuse to perform. Whatever cause of action he may have for the purchase money which he paid is another matter; it constitutes no defense to the present action. (*Gervaise* v. *Brookins*, 156 Cal. 103 [103 Pac. 329] ; *Garvey* v. *Lashels*, 151 Cal. 531 [91 Pac. 498] ; *Worley* v. *Nethercott*, 91 Cal. 512 [25 Am. St. Rep. 209, 27 Pac. 767] ; *Haile* v. *Smith*, 128 Cal. 415 [60 Pac. 1032].) ■ When a vendee relies upon an equitable defense his answer or other pleading must make out a complete equitable title and right to posses-

sion thereunder, equivalent to a bill in equity for specific performance. (*Wallace* v. *Maples*, 79 Cal. 433 [21 Pac. 860]; *Arguello* v. *Bours*, 67 Cal. 450 [8 Pac. 49]; *Miller* v. *Fulton*, 47 Cal. 146; *Bruck* v. *Tucker*, 42 Cal. 352.) In the present case West and wife by their pleading denied the ownership of Calkins and alleged title in themselves by adverse possession. In *Woodard* v. *Hennegan, supra,* the court says: "The defendant having by his answer repudiated the contract, and having refused to pay the balance due, the plaintiff can maintain the present action to recover possession. . . . The defendant could have set up in his answer the agreement to convey, his willingness to perform, and offer to perform on his part by paying the balance found to be due, and the court, by its decree, could have, while giving the plaintiff the amount due, also fully protected the rights and equities of the defendant." ■ One who appeals to a court of equity to defend him against the legal title to land, of which he is in possession, must do equity by paying or offering to pay the price which he agreed to pay. (*Hicks* v. *Lovell, supra; Eastman* v. *Plumer,* 46 N. H. 464.) When a vendee abandons his purchase and repudiates his contract, the vendor is not bound to resort to a court of equity for relief, but may sue in ejectment. (*Keller* v. *Lewis,* 53 Cal. 118.)

■ Appellants West and wife contend that when Calkins was unable to give a deed conveying a clear title on April 1, 1921, that they, by tendering to the title company a promissory note and trust deed in accordance with the escrow instructions, had fully performed the contract on their part. In *Gervaise* v. *Brookins, supra,* which was an action in ejectment, where the vendor had conveyed the property prior to the making of the agreement involved; where the purchasers were let into possession and had paid $3,000 on the purchase price of $15,000 before they discovered that their vendor could not give title, and where the balance of the purchase price was made by giving promissory notes payable on or before a certain date for ten consecutive years, the court says: "Brookins has not unconditionally refused to make the payments. Before the installment of 1904 became due, Lillian M. Book told him that she did not expect him to make further payments until she could secure title or arrange to have the same conveyed to him. He thereupon offered to pay all the notes immediately, upon the condi-

tion that he should, concurrently, receive a conveyance of the land transferring to him the title therein, and he refused to make any payment, except upon that condition. Each installment being made payable on or before the date named, at his option, he had the right to declare it all due and to make an offer of full performance at any time. He was entitled to the performance of this concurrent condition and had a right to make his offer dependent thereon (Civ. Code, sec. 1498). . . . His offer was therefore a good offer of performance under the law and the contract, and he is not in default unless he has become so by reason of his retaining possession while refusing to make payments and accept such title as his vendor can give. . . . It appears to be well established that, under such circumstances, the vendee cannot retain possession of the land, while neglecting to pay the price when due, and that the failure of the title does not give him the right to continue in possession by merely keeping good an offer to perform on his part conditioned upon performance by the vendor. The reasons for this rule are thus stated by the Supreme Court of the United States in *Burnett* v. *Caldwell*, 9 Wall. (U. S.) 293 [19 L. Ed. 712] : 'If the contract stipulates for possession by the vendee, or the vendor puts him in possession, he holds as a licensee. The case comes within the category of a license. In such cases, the vendee cannot dispute the title of the vendor any more than the lessee can question the title of his lessor. . . . Upon default in the payment of any installment of the purchase money the possession becomes tortious and the vendee may at once begin ejectment.' In that case the court further held that the fact of want of title in the vendor, and the fact that the vendee had paid a large part of the purchase price, were alike immaterial as defenses to an action of ejectment by the vendor. . . . In *Rhorer* v. *Bila*, 83 Cal. 54 [23 Pac. 275], upon similar facts the court says: 'A purchaser cannot remain in possession of lands under a contract and at the same time refuse to pay the purchase price. . . . So long as the purchaser retains possession he waives all previous objections, whether of defect of title or delay in completing it; and is bound to accept title according to the terms of the contract if offered while he still retains possession.' . . . If on the other hand, the purchaser chooses not to rescind, but to retain possession under the

contract, he can do so only on the condition that he pays the purchase money and interest according to the contract." In *Garvey* v. *Lashels, supra,* the court holds: "If a perfect title was to be conveyed, and the vendor is unable to give such title, the vendee has appropriated remedies, but he cannot keep both the property and the purchase money." Here, West and wife, while retaining possession of the property, failed to pay the $700 and also the payments of principal and interest on the $1,800 mortgage, and also the $25 monthly installments after the first year. The tender of the note and trust deed was not a full compliance with these terms of the contract. ■ Nor does the note of a debtor, if not itself paid, constitute a payment unless received by the creditor under an express agreement to accept it as absolute payment. (*Menzel* v. *Primm,* 6 Cal. App. 204 [91 Pac. 754]; *St. Clair* v. *Joos,* 90 Cal. App. 311 [265 Pac. 968].)

■ Cross-defendants West and wife contend that if the time for delivery of a deed by Calkins should be considered as being extended until the last installment of the $1,200 fell due in December, 1924, yet ejectment would not lie because no deed was tendered. A number of cases are cited to this point, but their facts do not parallel the issues here presented. In *Hicks* v. *Lovell, supra,* the court says: " 'The refusal of one party to perform his contract,' says the Supreme Court of New York, in *Graves* v. *White,* 87 N. Y. 465, 'amounts on his part to an abandonment of it. The other party therefore has a choice of remedies. He may stand upon his contract, refusing assent to his adversary's attempt to rescind it, and sue for a breach, or in a proper case for a specific performance, or he may assent to its abandonment, and so effect dissolution of the contract by the mutual and concurring assent of both parties. In that event he is simply restored to his original position . . . Neither party, thereafter, could invoke its terms or protection as against the other; and the plaintiff was at liberty to maintain ejectment to recover the possession of the land to which he had legal title.' "

In our opinion the evidence sufficiently supports the findings on this issue, and therefore, under the authorities from which we have quoted, the judgment appealed from by cross-defendants and appellants William Holmes West and

Dora May West, adjudging that the contract be canceled and annulled, should be affirmed.

There is no merit in the contention of cross-defendants that finding VIII is inconsistent with findings I and III. Finding VIII finds "The title to the real property involved in this action was not in the cross-complainants, C. C. Calkins and W. W. Kaye, or either of them. That neither of said cross-complainants C. C. Calkins or W. W. Kaye were at that time in possession, nor could said C. C. Calkins or W. W. Kaye, or either of them, convey to the cross-defendants, William Holmes West and Dora May West, or either of them, or to any other person whomsoever, the said real property until about October 30th, 1924, for the reason that the title to the said real estate at said time did not stand of record in the name of either cross-complainants and was the subject of an action to quiet title." Finding I finds "that on or about the 26th day of February, 1920, the cross-complainant being then the owner of that certain tract of real property (describing the property) entered into an agreement for the sale of the said property to defendant William Holmes West," and finding III finds "that subsequent to the 26th day of February, 1920, the cross-complainant C. C. Calkins conveyed to the cross-complainant W. W. Kaye an undivided one-tenth interest in said property."

It is true, as urged by cross-defendants, that where material findings are inconsistent the judgment cannot stand, but it is also the rule that if the findings can be reconciled the judgment will be affirmed. From a reading of the findings it is apparent that finding VIII "That the title to the real property involved in this action was not in cross-complainants" has reference to the record title, while finding I "that on or about the 26th day of February, 1920, the cross-complainant being then the owner of that certain tract of real property" is a finding of actual ownership. In other words, the court found that in February, 1920, cross-complainant Calkins was the owner of the property, although the title did not stand of record in his name and therefore a clear title could not be conveyed until October 30, 1924, when the action to quiet title was disposed of.

It is true there is no evidence to support the finding that Calkins conveyed a one-tenth interest to Kaye, yet, if

there were error in making such a finding, it is not material. Cross-complainant Kaye was brought into the case on motion of plaintiffs and on the suggestion of the attorney for cross-defendants, and in the seventh special defense of cross-defendants it is alleged that cross-complainant Kaye acquired his interest with knowledge of the contract between Calkins and West. ▆▆ Furthermore, there was at most a misjoinder of parties and it is well settled that a judgment will not be reversed on appeal for such misjoinder unless the party complaining has been misled to his prejudice or the error otherwise appears to have been injurious (*Asevedo* v. *Orr,* 100 Cal. 300 [34 Pac. 777]; *Hirschfield* v. *Weill,* 121 Cal. 14 [53 Pac. 402]).

▆▆ Cross-complainants C. C. Calkins and W. W. Kaye complain that the court erred in not entering judgment in their favor for $2,000, which the court found to have been collected by William Holmes West and Dora May West as rent from the time of their entry into possession of the property, and which amount the court found to be the value of the use and occupancy of such property, claiming that the conclusions of law are inconsistent with the findings of fact.

The court found that at the time cross-defendants William Holmes West and Dora May West entered into possession under the agreement, cross-complainant C. C. Calkins was the owner of the property; that cross-defendants paid to cross-complainant Calkins $200 principal and no more; that cross-defendant William Holmes West since March 1, 1922, has occupied the premises and that the rental value of the premises from that date to June 1, 1925, was the sum of $2,000; that the value of the use and occupation of the premises from March 1, 1922, to June 1, 1925, is the sum of $2,000; that ever since March, 1922, the cross-defendants have held possession of the premises adversely to cross-complainants; that cross-defendants have not performed the terms of the contract under which they held possession excepting that they made payment of the sum of $200, and have made a portion of the payments of the interest on the mortgage indebtedness assumed by them. The conclusions of law which follow these findings determine that the cross-complainants are entitled to a judgment canceling the contract and also a judgment for the recovery of possession of the premises, but such conclusions of law do not adjudge

that the cross-complainants are entitled to judgment against the cross-defendants for the recovery of $2,000, found to be the value of the use and occupation of the premises.

In *Whittier* v. *Stege*, 61 Cal. 238, the court declares: "When, therefore, the defendants, after they had obtained possession lawfully, substituted repudiation of the contract and refused to comply with its terms . . . they divested themselves by their wrongful act of the equitable estate which they acquired under the contract, and became trespassers or tenants at will, against whom their repudiated vendors could maintain ejectment." "In an action for the recovery of property, where the plaintiff shows a right to recover at the time the action was commenced . . . the plaintiff may recover damages for withholding the property" (Code Civ. Proc., sec. 740). Rents and profits may be recovered by one entitled to possession when claimed in an action in ejectment, being limited to such as accrued subsequent to the ouster alleged, or, in other words, the occupation of the one holding possession against the owner (*Young* v. *Howell*, 14 Cal. 468; *Hannan* v. *McNickle*, 82 Cal. 122 [23 Pac. 271].) In *Seivers* v. *Brown*, 34 Or. 459 [45 L. R. A. 644, 56 Pac. 173], the court uses this language: "It has been held that a purchaser in possession of real property under the vendor's license cannot be evicted, so long as he offers to perform the conditions of his agreement (*Whittier* v. *Stege*, 61 Cal. 238); but, if he refuses to comply therewith the vendor may treat him as a tenant at will (*Harris* v. *Frink*, 29 N. Y. 24 [10 Am. Rep. 318]); and he thereby becomes liable to the vendor for the reasonable value of the use of the premises for the time during which he continues in possession after he abandons the agreement (citing cases). The application of this rule would render plaintiff liable to defendant for the reasonable rent of the land from the time the relation of vendor and purchaser was abrogated by the former's refusal to keep his agreement."

Under the findings of the court the conclusion follows as a matter of law that cross-complainants are entitled to judgment for $2,000, found by the court to be the value of the use and occupation of the premises.

The judgment, adjudging that the contract be canceled and annulled, is affirmed, and the order denying cross-complainants Calkins' and Kaye's motion made under section 663 of the Code of Civil Procedure, to vacate the

judgment and to enter a judgment identically in the same form, but with the additional provision that cross-complainants have and recover from cross-defendants William Holmes West and Dora May West the sum of $2,000, being the value found by the court of the use and occupation of the premises, is reversed, with direction to the trial court to enter judgment accordingly.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 26, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1929

All the Justices present concurred.