[Civ. No. 4691. Second Appellate District, Division Two.—March 21, 1928.]

MARTHA J. ST. CLAIR, Respondent, v. RACHEL E. JOOS, Appellant.

F. E. Davis and L. E. Dadmun for Appellant.

J. Wiseman Macdonald for Respondent.

WORKS, P. J.—Plaintiff commenced two actions against defendant. The first is an action of unlawful detainer and was numbered 111662 in the files of the trial court. The second is an action to quiet title and was numbered 111663 there. Under stipulation the two were tried together, the evidence applicable to each being segregated in the mind of the trial judge for the purposes of decision, and separate judgments were necessarily pronounced. Separate notices of appeal, of course, were filed. There is before us, however, but one bill of exceptions, covering both cases, and there was filed but one transcript on appeal with a single title, presenting the record in both. The two cases pend in this court, therefore, under but one number. These matters are mentioned for the sake of clarity, as we must pronounce two distinct judgments in a litigation which appears from our files to be presented by a single action. To make our judgments intelligible they must refer, respectively, to the appropriate trial court numbers.

Defendant appeals from judgments rendered against her in both actions.

We shall consider first the second action commenced, the action to quiet title, trial court number 111663.

■ The interest of appellant against which respondent sought to quiet title arose under a contract of sale by which respondent agreed to sell and appellant agreed to buy the real property involved in the action. Following the allegations of the complaint the trial court found that respondent was the owner of the property. The only evidence upon the issue was the statement of respondent while she was on the witness-stand to the effect that she was the owner of it—''I own . . . the real property involved in this action.'' It is contended that the evidence fails to support the finding, but the contention is without merit. The testimony of respondent was received without objection, and the point made by appellant, therefore, is not that the trial court erred in the admission of improper testimony. The only contention open to appellant is that the evidence is without sufficient probative weight to support a finding. ''As a general rule ownership of property is a fact to which a witness may testify'' (*Perkins* v. *Sunset Tel. Co.*, 155 Cal. 712 [103 Pac. 190]), and it is idle to assert that the law permits the introduction of evidence which, when received, would be without probative force.

■ The contract of sale provided that the selling price of the property agreed to be conveyed was $18,000, payable by the giving of a note for $3,000, the payment of $1,500 on or before one year, of $8,000 on or before a specified date, and of $5,500 by the assumption of a certain mortgage. The trial court found that the price was $18,000, but that the payments were to be $3,000 and a first deferred payment of $15,000, a second of $8,000 and a third of $4,500. It will be observed that the payments thus found make a total of $30,500 a result caused by the court finding an installment of $15,000 instead of one of $1,500, as provided in the contract, and one of $4,500 instead of one of $5,500. It is contended that this finding, being divergent from the very terms of the contract, was not supported by the evidence, and it is obvious that it was not. It is probable that the manner in which the finding was cast was the result of misprision, but be that as it may, the finding in its entirety was wholly immaterial and unnecessary to a determination of the action. The evidence shows without dispute that appellant made none of the deferred payments. Whatever their amount, she

utterly failed in her promise to pay a single one of them. In truth, the question whether respondent was entitled to a decree quieting title turned wholly upon considerations surrounding and accompanying the giving of the note for $3,000. We therefore determine that the error of the trial court in its finding as to the amounts of the deferred payments of cash was immaterial and consequently harmless.

The next question made by appellant is concerned in the giving of the note for $3,000. In addition to the provisions of the contract which are above stated, it was recited that the $3,000 note to be given was to be due "on or before sixty days." There was no express provision as to when the note was to be delivered. The evidence shows, however, that it was dated June 1, 1922, which was also the date of the contract, and that it provided that it should be due on or before 60 days after its date. The paper therefore became payable on July 30, 1922. The complaint alleged that appellant had been in default ever since September 1, 1922, and that she had never made any payment under the contract. The allegation that appellant was in default was denied in the answer, but the trial court found that she had been so ever since the date last mentioned. Appellant contends that this finding was not sustained by the evidence. It is said that no default could be predicated of a failure to pay the note, for the reason that under the terms of the contract the note itself was a payment, as the instrument provided in effect that $3,000 was to be paid by the giving of a note. It is also pointed out that no other payment was provided for by the contract until June 1, 1923.

The evidence is undisputed that appellant never paid the note for $3,000, nor any part of it, nor any interest on it. It would be a strange state of affairs if this evidence were insufficient to support the finding which is assailed by her. If the contention of appellant can be sustained a vendee under a contract of sale, by the giving of a worthless note— and the one here under consideration appears to have been of that character—could tie up real property and could maintain a cloud upon its title for so long a time as might be fixed in the contract before the date upon which, by express and unmistakable provision, a payment of actual cash

was to be made. Indeed, in a case in which the contract provided for the making of a long series of deferred payments, even during a lengthy succession of years, all by the delivery of promissory notes from time to time, a default under the contract could never arise if the notes were given, and the vendee would acquire title to the land by means little better than robbery, for the vendor would be remitted wholly to his actions upon the worthless notes as they fell due. The only possible salve to his injured state would lie in his ability to levy attachments upon the property which, in all conscience, was his own. Such a state of affairs makes no decided appeal to a court of equity. It could not be permitted to exist except under a contract which, by express and absolute terms, allowed such an anomaly to thrive. ■ "It is well settled that the note of a debtor or of a third party, if not itself paid, does not constitute a payment unless received by the creditor under an express agreement to accept it as an absolute payment." This language was used in a case in which one party had agreed to sell real property to others upon the payment of certain installments of cash, but in which, according to the opinion of the court, there was a subsequent agreement "by which the plaintiff agreed to accept from Chambers," one of the defendants, "a promissory note for $2,500 in the place and stead of that amount of money which Chambers had agreed to pay plaintiff," and it is this note which the court had in view in employing the language first above quoted from the opinion (*Menzel* v. *Primm,* 6 Cal. App. 204 [91 Pac. 754]). It is true that in that case the note was given to take up a pre-existing obligation, but we think that fact does not render the decision inapplicable here. It is true here that the original contract of sale provided that the vendee should make an initial payment of $3,000 "by the giving of a note due on or before sixty days." Notwithstanding that fact respondent had the right to expect payment of the note at maturity, and we think, upon equitable considerations, the action being one to quiet title, that appellant was in default when she did not pay. This is surely true under a clause of the contract to which we have not yet referred: "This agreement is to be interest bearing from the date of the payment of the original first payment

note and possession of the property shall be given at such date.'' Here a material part of the agreement, on the score of performance, is made to depend on the payment of the note. We think the disputed finding was supported by the evidence.

■ Appellant's final contention in the action to quiet title is that respondent has mistaken her remedy. It is said that her only recourse was to sue to foreclose appellant's right to purchase, when the court might have rendered decree allowing her time within which to perform her obligations under the contract. The form of remedy sought was, however, proper. Time was expressly made of the essence of the agreement and it also contained the provision: ''In the event of a failure to comply with the terms hereof by [the vendee], [the vendor] shall be released from all obligations in law or equity to convey said property, and [the vendee] shall forfeit all right thereto, and all money theretofore paid thereon, shall be as liquidated damages for the non-fulfillment hereof by [the vendee].'' Under such a contract an action to quiet title is the appropriate remedy (*Oursler* v. *Thacher,* 152 Cal. 739 [93 Pac. 1007]).

■ We come now to a consideration of the action of unlawful detainer.

Appellant, not having acquired the right under the above-mentioned contract of sale to enter into possession of the property covered thereby, made an agreement with respondent under which she became entitled to the possession of a part of the premises as a tenant and at a stipulated monthly rental. The trial court found that appellant was in default in the payment of rental and this finding was based upon one to the effect that the rental was payable monthly in advance. It is contended that these findings were not supported by the evidence. If the rent was payable in advance both findings are supported. There was nothing more than a conflict of evidence upon the question whether it was so payable, and the finding to the effect that it was cannot be disturbed on appeal.

■ Appellant insists that the judgment must be reversed because respondent failed to serve upon her the thirty days' notice required under certain circumstances by section 789 of the Civil Code. The section has no applica-

tion here. Appellant was served with the three days' notice required by subdivision 2 of section 1161 of the Code of Civil Procedure and by the express mandate of that enactment she was guilty of an unlawful detainer (15 Cal. Jur., p. 848, sec. 275).

Judgment affirmed in superior court No. 111662 and in superior court No. 111663.

Thompson, J., and Hazlett, J., *pro tem.*, concurred.