[Civ. No. 14652.   Second Dist., Div. Two.   Jan. 26, 1945.]

ELLIOTT L. KELSO et al., Respondents, v. HARRY F. ULRICH, Appellant.

William R. Law for Appellant.

Edward D. Garratt for Respondents.

MOORE, P. J.—On June 15, 1943, plaintiffs were the owners of a homesite lot in the city of Los Angeles. On that day the defendant Harry F. Ulrich by a writing contracted for

the purchase of the property on the following terms, to wit: To pay two notes secured by trust deeds upon the premises in the sums of $1,539.31 and $1,027.33, in installments payable respectively at $17 and $33 per month; to pay the sum of $650 cash and the balance of $500 on October 1, 1943, with interest at 6 per cent; to pay the current and subsequent taxes and assessments. The cash payment was made and the purchaser entered into the possession of the property. Thereafter no payments were made by defendants on either of the trust deed notes. Neither was any tax paid by defendants, and they defaulted in the payment of the $500. Although notified of their defaults none of them was cured. To save themselves from loss plaintiffs made the payments on the trust deed notes to and including those accruing in the month of December, 1943, in the aggregate sum of $193, no part of which was ever paid to plaintiffs.

Subsequent to October 1, 1943, plaintiffs demanded of defendants that they pay the balance due under their contract and cure existing defaults but defendants were deaf to all demands. To expedite the consummation of the purchase and sale of the property on October 23, 1943, plaintiffs opened an escrow with the Bank of America National Trust and Savings Association, South Pasadena Branch, and deposited therein a good and sufficient grant deed conveying the real property from plaintiffs to defendant Harry F. Ulrich. Also, they deposited a policy of title insurance showing the title to be vested in the buyer but defendants made no deposit of moneys in such escrow. Thus the matter rested till December 24, 1943, when plaintiffs notified defendants that in the event of their noncompliance with the contract by December 27th, forfeiture of all moneys paid and of all rights of defendant under the agreement would be declared. Again defendants defaulted. On January 6, 1944, plaintiffs notified defendants in writing that by reason of their defaults in failing to make payments provided to be made by the contract plaintiffs had elected to declare the interest of defendants in the contract, in the property and in the moneys paid thereon to be forfeited, and they did so declare and that the agreement was cancelled. Also, they demanded that the Ulrichs surrender possession of the premises, which demand defendants ignored.

On January 8, 1944, plaintiffs filed their complaint setting forth the foregoing facts and demanded judgment forfeiting

the interest of defendants in the contract and in all moneys theretofore paid under it and for its cancellation. In a second count they sued to quiet title. Mrs. Ulrich having defaulted and defendant Harry having duly answered, the cause was set for trial on March 14, 1944, when the defendants again defaulted by failing to appear at the trial. On motion the answer was stricken and judgment was granted as prayed by plaintiffs.

The contentions made on this appeal are (1) that the complaint does not state a cause of action, and (2) that respondents waived the right to declare a forfeiture by entering into an escrow agreement. In making such contentions appellant is apparently oblivious of the uniformity of decisions in this state upholding judgments of the forfeiture of contracts for the purchase on deferred payments of real property where time has been made of the essence of such contracts. The decisions vary slightly in diction and phraseology, but for over fifty years they have maintained a constant trend in support of the vendor's paramount right of forfeiture of such contracts. The vendor may upon the noncompliance of the vendee rescind the contract and retake possession of the property. (*Miller* v. *Waddingham* (1891), 3 Cal.Unrep. 375 [25 P. 688].) In the absence of a sufficient equitable showing by the vendee to excuse his failure to comply with the terms of the contract, the vendor, while standing on his contract, is entitled to a decree forfeiting all of the rights of the purchaser thereunder in order to cut off the possibility of any further claim by the vendee which might embarrass or cloud the title. And they have the right in equity and in law to retain the moneys theretofore paid on the contract. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, 11 [55. P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199].) In a recent decision involving a contract for the purchase of real property in which time was of the essence, it is held that where all installment payments under the contract have become in default and notice has been given that unless the payments shall have been made within a reasonable period all of the vendee's rights under the contract shall be forfeited, the vendor is entitled to judgment forfeiting the right of the vendee to the contract and to moneys paid thereunder. (*Sawyer* v. *Sterling Realty*, 41 Cal.App.2d 715, 724 [107 P.2d 449].) Where a vendee in possession has refused to complete his contract of purchase he may be considered to have abandoned

the contract. He has by his wrongful act divested himself of the equitable estate which he had acquired under the writing and becomes a trespasser or tenant at will against whom his repudiated vendor may maintain ejectment. (*Whittier* v. *Stege*, 61 Cal. 238; *Fisher* v. *Chaffee*, 49 Cal.App.2d 97, 100 [121 P.2d 51].) These decisions leave no doubt as to the remedy of an aggrieved vendor for the forfeiture of all claims of the defaulting vendee under a contract for the sale of realty where time of payment is made of the essence. This doctrine, practice and procedure have been constantly approved. (*Bishop* v. *Barndt*, 43 Cal.App. 149, 157 [184 P. 901]; *Oursler* v. *Thacher*, 152 Cal. 739 [93 P. 1007]; *Andrews* v. *Karl*, 42 Cal.App. 513 [183 P. 838].) ▌ Under such a contract action to quiet title is the appropriate remedy. (*St. Clair* v. *Joos*, 90 Cal.App. 311, 316 [265 P. 968]; *Mayer* v. *West*, 96 Cal.App. 31 [273 P. 849].)

Appellant has cited decisions (*Elliott* v. *Title Insurance & Trust Co.*, 64 Cal.App. 508 [222 P. 175]; *Robert Marsh & Co., Inc.* v. *Tremper*, 210 Cal. 572 [292 P. 950]; *Ebbert* v. *Mercantile Trust Co.*, 213 Cal. 496 [2 P.2d 776]; *Ross* v. *McDougal*, 31 Cal.App.2d 114, 122 [87 P.2d 709]; *Grimes* v. *Steele*, 56 Cal.App.2d 786 [133 P.2d 874]) for the purpose of establishing that the contract is void under section 1670, Civil Code, and that its provision for forfeiture of the contract and of all moneys paid thereunder is not justified by section 1671.\* None of the cited authorities arises out of a contract for the purchase and sale of real property with time of deferred payments of its essence. Those cases have to do with attempts to enforce the forfeitures which are condemned under the general equity rule which abhors a forfeiture. (See *Ballard* v. *MacCallum*, 15 Cal.2d 439, 444 [101 P.2d 692], where the chief justice distinguishes the cited cases from those arising out of contracts such as that now before us.)

▌ The contention that there was a waiver of the right

---

\* Civil Code, section 1670. Contract fixing damages, void.

Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section.

Civil Code, section 1671. Exception. The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

to declare a forfeiture by entering into an escrow agreement is based upon some fancied situation not present in the case at bar. There was no escrow agreement as such, but after continued defaults had been made and repeated demands to cure them had been ignored the escrow was established for the purpose of enabling the defendants to comply with their contract with the assurance of receiving title upon the payment of the moneys due.

The contention that forfeiture cannot be declared because appellant in his answer offered to pay all that was due is inane. The declaration in the answer that Mr. Ulrich "hereby offers to pay to plaintiffs the sums that he is now in arrears upon ... upon the furnishing . . . of a good and sufficient deed to said property with a certificate of title," has no more virtue than his broken promises in the contract of purchase. The only valid offer to be made by a defaulting vendee is that accompanied by a tender of the moneys due. Were it otherwise, defaulting contractees might protract their nonmeritorious contentions indefinitely to the disadvantage of one who has been wronged by the wilful occupancy of his property by a defaulting vendee who has maliciously scorned his own solemn obligations.

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.

